he offers. Nevertheless, as the words complained of tend to raise an uncertainty, they ought to be stricken out.

3. As to the third branch of the motion involving the averment generally of the performance by plaintiff of the conditions and agreements on his part, I wish to refer to my decision in the case of Lauer, administratrix, v. Equitable Life Assurance Co. [8 Nisi Prius, 117], decided concurrently with this case, in which I made a careful examination of this point, and in which I came to the conclusion that when performance of conditions is pleaded in actions on contract, the averments thereof are intended, however general in their nature, to refer alone to such conditions as are stated in the pleading as a part of the defendant's contract, or necessarily implied from the nature of the particular contract sued on. In other words, that so much of the petition or declaration as is devoted to averment of performance of conditions precedent is not by way of explication of the terms and conditions of the contract, which must be independently set forth in the petition or declaration when the contract itself is stated, either expressly or by way of necessary inference, but are averments which are to show that the conditions of the contract, *as they are stated or described* when the contract is set forth, have been fully complied with, and thus the obligation of the defendant has been fixed.

That was the rule at common law, where in pleading such performance it was incumbent upon the plaintiff to do it specifically—that is, to take each condition contained in the contract and show by his averments that he had performed them exactly and in accordance with the intent of the contract. Now, such performance could not be averred, unless the conditions had been previously averred, and that must be done when the contract or promise is stated. In other words, these two portions of the declaration or petition go together, the averments as to performance following as a necessary sequence to the statement of the contract, and, consequently, the conditions whose performance is averred must be, and can be, only those which form part of the contract or promise as stated. When a pleader avers generally that he has performed all the conditions on his part to be performed, that, read in connection with the contract as previously stated by him, means that he has performed all of the conditions set forth required by the contract stated. As a consequence of this construction, no uncertainty as to the existence of other conditions can arise from the general averment permitted by the code, for in its effect it is to be limited to the contract described in the petition.

Of course, as said in the Lauer cases, there may be conditions over and above those set forth in the statement of contract as made by the pleader; but, if that turn out so, then the delinquency is one, not of form, but of substance; the plaintiff simply has not stated the contract truly and correctly; and the defendant meets that by tendering an issue on that fact. If the defendant is right, then plaintiff is sure to run up against a variance.

For these reasons, which are elaborated in the Lauer cases, this branch of he motion will be denied.

William Worthington, for the motion.

Thornton M. Hinkle and Frederick W. Hinkle, contra.

---

(Superior court of Cincinnati.)
(Special term.)
## LOUISE H. GREENE v. LEOPOLD BURK-HARDT.

---

To create legal domicile there must be actual residence combined with intent to remain.

DEMPSEY., J.

The question involved in this case is whether under the facts and circumstances as developed in the evidence, the plaintiff effected a change of his domicile from Ohio to California, and in the view that I have taken of the evidence it is not material whether the time be 1895 or 1899.

It is admitted that up to 1895, and even up to 1897, the plaintiff's domicile, actual and legal, was in Hamilton county, Ohio, although in 1895 he had actually gone to California and intended eventually to settle there. Now, domicile involves two elements, intent and fact, the fact actually of residence combined with the intent to remain, and in Mr. Greene's case these two elements concurred as to Hamilton county in 1895.

In 1895 Mr. Greene conceived the intention of changing to California. That may be conceded from the evidence. But to effect a change of domicile more is required than mere intent, for the rule is unquestioned that the old domicile continues until a new one is shown to be acquired (Smith v. Dalton, 1 C. S. C. R., at p. 153; Abbot's Trial Ev., 105), and a new domicile is not acquired until, as to it also, there be concurrence of fact and intent.

Now, was there in fact a change of Mr. Greene's place and abode from Ohio to California? The burden is on him to prove the change. Abbot's Trial Ev., 105. The usual evidence as to the fact of residence is as to the abode of the person, and the place where he "lives" is taken to be his domicile until facts adduced show the contrary. * * * If a person was moving to and fro, the question where he had his *home,* where *he had established his family,* if he had one, or where his strongest domestic ties are fixed, may determine in which of the several places he "lived," within the meaning of the rule, even though he declared himself a resident of his place of business. Abbot's Trial Ev., 103-104. Now, apply these tests to the evidence of Mr. Greene, and it is perfectly manifest that while his intention may have been to transfer his state allegiance he did not accomplish it until after the marriage of his daughter, for whose sake Mrs. Greene remained here. All the various circumstances at various hotels, the purchase of one dwelling house and the renting of another, the refurnishing thereof, the storage of the furniture, the tax return on personal property,

the registration for purposes of suffrage, show to my mind almost conclusively that the residence in fact was not altered, and was not to be altered, until after the daughter was married. As a consequence, at the time of the judgment complained of herein, Mr. Greene had not abandoned his residence or domicile in Hamilton county, Ohio, and was consequently subject to process served in the way it was in this case.

As to the claim made that because Mr. Greene was away and did not actually get the summons until too late to fight the case, or appeal from the judgment, there being no fraud of any kind alleged, I know of no principle that will allow chancery to interfere.

The judgment will be for the defendant.

Maurice L. Galvin, for plaintiff; Albert Bettinger, contra.

---

(Cuyahoga County Common Pleas.)
March, 1901.

## JAMES T. SARGENT v. ADALINE SARGENT.

Where the decree for alimony is one that is subject to modification, it is not a fixed liability absoluetly owing at the time of filing the petition, and therefore is not provable and is not releasable in bankruptcy. But where the decree is of a kind or form that makes it absolute, then it is a fixed liability absolutely owing, and would be discharged by a discharge in bankruptcy.

Where a decree for alimoney is an adoption of an agreement between the parties, it is not the judgment of the court based upon evidence, but it is simply the agreement of the parties carried into the decree; it is final, and may not be modified by the court hereafter.

Oral evdence can not be admitted for the purpose of determining whether a decree for alimony was based upon the evidence heard in the case, or, based upon an agreement of the parties.

---

On motion requiring the plaintiff to show cause, etc.

PHILLIPS, J.

The case of Sargent v. Sargent was a divorce and alimony case, in which the plaintiff was divorced and the defendant given alimony, part of which is unpaid. There is an application to require the plaintiff to show cause why he should not be attached for non-payment of alimony. This case was submitted some days ago; it presents as the ultimate question, the question whether a discharge in bankruptcy releases a decree for alimony. This plaintiff, after this decree, filed the petition in bankruptcy, and was in due course of procedure discharged; and he defends against this application to show cause by asserting his discharge in bankruptcy. If that decree has been discharged, of course he is not liable to attachment; if it has not been, the obligation still rests upon him, and, so far as any defense has been made to this application it should be granted. I will not take the time to refer to any authorities. A great many were cited in the argument. The case was heard upon evidence.

The general rule is, that a decree for alimony is subject to modification by the court at any time before it has been satisfied, on any ground subsequently arising that requires or justifies its modification. It may be increased, it may be diminished, it may be taken away entirely, and so on; the decree is ambulatory so long as it remains unsatisfied. That is safely so where the alimony is payable in installments—where there is some conflict, I think it is so where the alimony is payable *in solido*. But that is the general rule and well settled.

It has been held, with a degree of uniformity, that such decree for alimony, that is, ambulatory, is not released by discharge in bankruptcy. The Bankrupt law, section 17, provides that the discharge in bankruptcy shall release the bankrupt from all his provable debts, and section 63 provides what debts of the bankrupt are provable in bankruptcy. It says, that a fixed liability absolutely owing at the time of filing the petition may be so proved, and of course he would then be released. As I have said, where the decree is one that is subject to modification, it has been held with a degree of uniformity that it is not a fixed liability absolutely owing at the time of filing the petition, and therefore is not provable and is not releasable.

It has also been held that where the decree is of a kind or form that makes it absolute, then it is a fixed liability absolutely owing, and would be discharged by a discharge in bankruptcy. So that the question in which this contest was made was as to whether or not this decree was of a character that, under those rules, would be released by the discharge in bankruptcy.

Now the decree is in the ordinary form. The plaintiff was ordered to pay the defendant $75.00 a month until the sum of $3,000.00 should be paid. So far as the form of it is concerned, the decree would be subject to modification by the court; there would not be a fixed liability absolutely owing.

But it was offered upon the hearing of the case to prove *aliunde* that the decree was an adoption by the court of a written agreement between the parties, by agreement of the parties. It is well settled, that where the decree for alimony is an adoption of an agreement between the parties, it is not the judgment of the court based upon evidence, but it is simply the agreement of the parties carried into the decree; that then is final; that it is not conflicting and may not be modified by the court thereafter.

Question was made whether the court could hear oral evidence for the purpose of determining whether this decree was based upon the evidence, or, was based upon an agreement of the parties, and although I took a little time at the noon hour to look that question up—I looked it up a little at the time and found nothing that was very satisfactory, but I concluded to admit the oral evidence. Upon that evidence I should find, that this decree was the adoption by the court of an agreement between